## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **KRISHNA NARSIMHAN,** | ) | |
| | ) | **No. 19 CV 1255** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **LOWE'S HOME CENTERS, LLC,** | ) | |
| | ) | **February 25, 2022** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

Before the court are Plaintiff's motions *in limine* Nos. 1-17. Defendant opposes the motions, except for Motion No. 13. For the following reasons, Plaintiff's Motion Nos. 3, 8, 11, and 13 are granted, Motion No. 16 is granted in part and denied in part, and Motion Nos. 1, 2, 4-7, 9, 10, 12, 14, 15, and 17 are denied:

### Background

Plaintiff claims that he sustained personal injuries for which Defendant is liable when a metal "down rod" slipped through the slats of his shopping cart during the checkout process and struck him on the lower part of his right leg. (R. 3-1, Compl. ¶¶ 2-3; R. 142, Def.'s Resp. Ex. D at 35-36.) Plaintiff contends that Defendant's negligence caused him to suffer from Chronic Regional Pain Syndrome ("CRPS"). (R. 142, Def.'s Resp. Ex. D at 65.) A jury trial is set to begin on April 18, 2022. (R. 103.) On December 23, 2021, Plaintiff filed his motions *in limine* Nos. 1-17. (R. 118; R. 119; R. 120; R. 121; R. 132; R. 134.) Defendant filed its oppositions to the motions on January 20, 2022. (R. 141.)

## Legal Standard

The court's authority to rule on motions *in limine* springs from its inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of such motions is to perform a "gatekeeping function and permit[ ] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Accordingly, evidence may be excluded pursuant to a motion *in limine* only when it is inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *See Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chi.*, No. 09 CV 4837, 2001 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce*, 469 U.S. at 41-42.

## Analysis

### A.      Motion No. 1

The motion is denied. Plaintiff seeks to bar Defendant from making any assertions about his motives for filing this action, including remarks that it is "easy" to sue, "we as a society are quick to sue," Plaintiff seeks to "blame someone," and similar commentaries. (R. 118, Pl.'s Mot. Nos. 1-12 at 1-2.) Plaintiff cites *Hubbard v. McDonough Power Equipment*, 83 Ill. App. 3d 272 (1980), to support his contention that allegations "ascribing bad motives to" a party are inflammatory and improper.[1] (Id.) Defendant counters that a plaintiff's motives for filing a lawsuit "are and can be proper argument in defending" such suit. (R. 141, Def.'s Resp. at 1.) Defendant also asserts that the motion should be denied because the case cited by Plaintiff does not support his argument. (Id. at 2.)

Evidence of motive can have probative value in some instances. *See Patterson v. City of Chi.*, No. 15 CV 4139, 2017 WL 770991, at *12 (N.D. Ill. Feb. 28, 2017) (finding that defendant could argue plaintiff had financial motivation to sue because such motivation could affect plaintiff's veracity); *Scott v. City of Chi.*, 724 F. Supp. 2d 917, 924 (N.D. Ill. 2010) (finding that defense "should be permitted to argue" that Plaintiff sued "to obtain money"). Plaintiff's ability to find authority disallowing such argument, *see Hubbard*, 83 Ill. App. 3d at 283, only serves to prove

---

[1]  The Federal Rules of Evidence generally apply to evidentiary issues in federal diversity actions. *Barron v. Ford Motor Co. of Can.*, 965 F.2d 195, 198-99 (7th Cir. 1992); *Lovejoy Elecs., Inc. v. O'Berto,* 873 F.2d 1001, 1005 (7th Cir. 1989). Although Plaintiff cites Illinois state law cases in many of his motions, federal cases and federal rules apply to the evidentiary matters before the court.

the broader point that sometimes the admission of motive evidence is proper and other times it is not. Considering this precedent, Plaintiff has not shown why evidence of his motive should be deemed inadmissible for any purpose in this case. Additionally, in accordance with Federal Rule of Evidence 403, Plaintiff fails to show that the probative value of motive evidence would always be outweighed by the danger of unfair prejudice. If Defendant offers evidence as to Plaintiff's motive for which the prejudicial effects outweigh the probative value, Plaintiff is free to object to such evidence at trial.

**B.     Motion No. 2**

The motion is denied. Plaintiff seeks to bar Defendant from making any comments suggesting that his "attorneys are asking for a greater amount of money than they actually expect to be awarded by the jury," including references to a "get rich quick scheme, welfare program, lottery, jackpot justice, or the like." (R. 118, Pl.'s Mot. Nos. 1-12 at 2 (internal quotation marks omitted).) Plaintiff argues that such statements improperly "arouse the prejudice or passion of the jury." (Id.) Defendant responds that an appropriate defense strategy can include "characterization or explanation for damages other than the basis claimed by the plaintiff." (R. 141, Def.'s Resp. at 2.) Defendant further asserts that Plaintiff's motion is too broad and that objections to its arguments regarding damages should be raised at trial. (Id.)

The court agrees that objections to the characterization of damages, if warranted, should be asserted at trial. Although the specific phrases mentioned in

Plaintiff's motion may be prejudicial, an order barring *all* criticisms about the amount of damages Plaintiff seeks would be overbroad. *See Rebodello v. Herr-Voss Corp.*, 101 F. Supp. 2d 1034, 1036 (N.D. Ill. 2000) (finding that if plaintiff does not produce evidence to support the relief sought at trial, defendant is entitled to argue for a lesser amount and ask the jury to "use reason" in assessing damages); *see also Semprini v. Naour*, No. 04 CV 1066, 2007 WL 9735729, at *1 (C.D. Ill. Jan. 16, 2007) (declining to grant a "blanket order" prohibiting all critique of damages). If Defendant uses unduly prejudicial language to attack Plaintiff's damages request, Plaintiff may object at trial.

## C.    Motion No. 3

The motion is granted. Plaintiff moves to bar Defendant from asserting that this case places a "burden upon the public as a whole and/or is responsible for a high cost of living for the public or healthcare for the public." (R. 118, Pl.'s Mot. Nos. 1-12 at 2.) Plaintiff cites *Lukich v. Angeli*, 31 Ill. App. 2d 20 (1961), to support his assertion that such comments exceed the "fair leeway" given to defendants during argument. (R. 118, Pl.'s Mot. Nos. 1-12 at 2.) Defendant responds that "[s]uggestions or proffered explanations of evidence" in the case and the relationship to the requested verdict "can be proper argument in defending a lawsuit," and asserts that Plaintiff's motion is overbroad. (R. 141, Def.'s Resp. at 2.)

The court agrees with Plaintiff. The impact, or the potential impact, of a judgment for Plaintiff upon the public has no relevance to the factual issues before the jury. *See* Fed. R. Evid. 401. Even if such remarks about the impact of Plaintiff's

case were relevant, their probative value would be substantially outweighed by their prejudicial effect. *See* Fed. R. Evid. 403; *Lukich*, 31 Ill. App. 2d at 30; *Saad v. Shimano Am. Corp.*, No. 98 CV 1204, 2000 WL 1036253, at *18 (N.D. Ill. July 24, 2000) (citing *Lukich* and agreeing with its rationale). Such comments about costs to the public are therefore inadmissible for any purpose and, as such, the motion is granted.

**D.    Motion No. 4**

The motion is denied. Plaintiff seeks to bar Defendant from offering evidence "pertaining to the time or circumstances under which Plaintiff employed his attorney."[2] (R. 118, Pl.'s Mot. Nos. 1-12 at 2.) Defendant counters that "[c]ross examination questions, suggestions or proffered explanations of evidence including a chronology of factual evidence can be a proper inquiry or argument in defending a lawsuit." (R. 141, Def.'s Resp. at 3.) Defendant further contends that the case cited by Plaintiff, *Svoboda v. Blevins*, 76 Ill. App. 2d 277 (1966), does not support his assertions in the motion. (R. 141, Def.'s Resp. at 3.)

Plaintiff argues that information relating to the retention of his attorney is immaterial to the disputed issues. However, no Federal Rule of Evidence, including the attorney-client privilege, precludes the admission of such information in its entirety. The attorney-client privilege applies to communications made in confidence between the client and his attorney for the purpose of obtaining or

---

[2] The heading of Plaintiff's motion also indicates that he wishes to bar any references pertaining to visits with his treating physicians. However, Plaintiff fails to mention his physicians in the argument section. (R. 118, Pl.'s Mot. Nos. 1-12 at 2.) Consequently, the court only rules on the attorney employment issue.

providing legal advice. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). While this privilege protects even initial conversations between an attorney and a prospective client looking to hire counsel, the mere timeline of when the client retained the attorney does not constitute a communication made in confidence. As such, the privilege does not attach to that information.

Nor does the *Svoboda* decision support Plaintiff's motion. In *Svoboda*, the defendant repeatedly asked the plaintiff whether his attorney had advised him to visit a certain physician, even after the trial court admonished the defendant not to do so. 76 Ill. App. 2d at 279-80. Such inquiries sought to discover the substances of the conversations between the plaintiff and his attorneys, which the court in *Svoboda* held were "improper lines of questioning." *Id.* at 280. Plaintiff, therefore, submits no case law "[precluding] an attorney [from] inquiring [about] the date of retention of counsel." (R. 141, Def.'s Resp. at 3.) Accordingly, a blanket ruling barring all references to the time or circumstances of attorney retention is overbroad. That said, Defendant is cautioned that the attorney-client privilege and work-product immunity do protect from disclosure a great many of the circumstances surrounding Plaintiff's retention of counsel, and this order is by no means an invitation to explore privileged information at trial. Additionally, the court does not address the relevance of such inquiries at this juncture.

## E. Motion No. 5

The motion is denied. Plaintiff moves to bar Defendant from referring to "the time or circumstances surrounding the payment of [his] medical bills." (R. 118, Pl.'s

Mot. Nos. 1-12 at 3.)  Plaintiff cites *Flynn v. Cusentino*, 59 Ill. App. 3d 262 (1978), to support his assertion that "the only relevant inquiry is whether the medical bills are paid, not when they were paid or who paid them."  (Id.)  Defendant responds that "it is unclear exactly what [the motion] relates to since there is no specificity related to any particular bill or payment," and contends that without more detailed information, the motion should be denied.  (R. 141, Def.'s Resp. at 3-4.)

Plaintiff has not established why evidence of the timing or payment of his medical bills should be considered inadmissible for any purpose.  The case Plaintiff cites, *Flynn*, 59 Ill. App. at 266-68, is unavailing to him because it stands for the proposition that it was reversible error to exclude the plaintiff's medical bill on the ground that she had not paid the bill herself.  The case does not support the wholesale exclusion of evidence related to the payment of medical bills.  *Id.*

## F.    Motion No. 6

The motion is denied.  Plaintiff seeks to bar Defendant from referring to any "ex parte statements or reports" from witnesses not called at trial, requesting that Defendant "be instructed not to . . . refer to any ex parte statement or report of any person not then and there present in court to testify[.]"  (R. 118, Pl.'s Mot. Nos. 1-12 at 3.)  Defendant counters that it cannot respond in detail because it does not know whether "ex parte statements or reports" refers to "documentary evidence, depositions, informal reports, medical records or any other possible interpretation." (R. 141, Def.'s Resp. at 4.)  Additionally, Defendant notes that expert witnesses may

rely on depositions and records in forming their opinions and states that experts may be cross examined about certain materials. (Id.)

The court treats the motion as a motion to exclude all out-of-court statements from witnesses not testifying at trial. Not all out-of-court statements constitute inadmissible hearsay. *See* Fed. R. Evid. 802. Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. However, statements that are offered for another purpose, or hearsay statements for which the Federal Rules of Evidence provide an exception or exemption, may be admissible. Fed. R. Evid. 802. Here, Plaintiff has not provided enough information to determine whether the "ex parte statement or report" constitutes inadmissible hearsay or whether it falls under one of the hearsay exceptions. Additionally, as Defendant points out, expert witnesses may provide an opinion without first testifying to the underlying facts that form the basis of the opinion (though such facts may be subject to cross examination). Fed. R. Evid. 703, 705. Therefore, whether the witness is a layperson or an expert, the court cannot grant a motion to bar all out-of-court statements.

## G.    Motion No. 7

The motion is denied. Plaintiff seeks to bar Defendant from "attempting to convey that Plaintiff failed to mitigate his damages." (R. 118, Pl.'s Mot. Nos. 1-12 at 3.) Plaintiff argues that Defendant is precluded from raising a failure to mitigate defense, citing *Bartimus v. Paxton Community Hospital*, 120 Ill. App. 3d 1060 (1983), to support his assertion that Defendant has not disclosed evidence creating

"an issue of fact as to Plaintiff's negligence in securing medical attention." (R. 118, Pl.'s Mot. Nos. 1-12 at 3.) Plaintiff also asserts that the failure to mitigate defense is precluded because Defendant did not plead it as an affirmative defense. (Id.; *see* R. 7, Def.'s Answer at 3-4 (raising only affirmative defenses of comparative and contributory negligence).) Defendant counters that "the case law cited does not require pleading of the affirmative defense . . . to raise the issue that [P]laintiff failed to take steps to mitigate his own damages, most particularly in that he never proceeded with the recommended option of placement of a stimulator as recommended by his pain physician." (R. 141, Def.'s Resp. at 4.)

The court agrees with Defendant. First, the case Plaintiff cites, *Bartimus*, does not prohibit Defendant from raising the issue of failure to mitigate damages. 120 Ill. App. 3d at 1071. The *Bartimus* court refused a jury instruction on mitigation of damages because an Illinois Pattern Jury Instruction noted that it should never be given if "an issue of fact as to the plaintiff's negligence in securing medical attention" is absent. *Id.* In that case, the trial court had sufficient evidence at the end of the trial to determine whether an issue of fact as to mitigation of damages existed. Here, the court has yet to receive detailed information on Plaintiff's failure to mitigate. And contrary to Plaintiff's assertion, Defendant contends that there may indeed be an issue of fact regarding Plaintiff's failure to mitigate because he opted not to receive the stimulator treatment.

Second, while Federal Rule of Civil Procedure 8(c)(1) requires affirmative defenses to be raised in response to a pleading, the Seventh Circuit has held that

"delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *See Kakkanathu v. Rohn Indus.*, No. 05 CV 1337, 2008 WL 4330144, at *2 (C.D. Ill. Sept. 17, 2008) (quoting *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005)); *see also Williams v. Lampe*, 399 F.3d 867, 871 ("[W]here the plaintiff has an opportunity to respond to a late affirmative defense, he cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered his complaint."). In *Kakkanathu*, an employment discrimination case, the court found the defendant had not waived its failure to mitigate defense because the plaintiff was asked about his job searches during his deposition, thus putting him on notice. 2008 WL 4330144, at *2; *see also Curtis*, 436 F.3d at 711 (holding that defendant's failure to plead the affirmative defense of exhaustion did not harm plaintiff because "he was aware of the exhaustion issue even when he filed his complaint, and he confronted the defense in responding to the motion for summary judgment").

The same result is warranted here. Like the plaintiff in *Kakkanathu*, Defendant placed Plaintiff on notice of the mitigation issue when Defendant questioned him about stimulator treatment during his deposition. (See R. 142, Def.'s Resp. Ex. D at 76-77.) Defendant asked Plaintiff whether he had scheduled the stimulator procedure as recommended by Dr. Buvanendran, whether he planned to undergo the procedure eventually, and whether Plaintiff was still being treated by Dr. Buvanendran. (Id. at 76-77, 92.) Defendant also questioned Plaintiff's wife about the same topics during her deposition. (See R. 142, Def.'s

Resp. Ex. E at 17-20.)  Defendant inquired as to her familiarity with the stimulator procedure, her understanding of what the device "is potentially going to provide" for Plaintiff, his decision-making process, and whether Plaintiff had ruled out the stimulator treatment as an option.  (Id.)  Therefore, the court finds that Plaintiff had sufficient notice of the possibility that Defendant would raise the mitigation defense and is not harmed by Defendant's failure to spell out the defense in its answer to the complaint.  That said, the court will decide whether to give a jury instruction on the issue of mitigation of damages after the close of evidence.

## H.    Motion No. 8

The motion is granted.  Plaintiff moves to bar Defendant from offering any evidence that he "has or may have filed prior or subsequent lawsuits which involved any party in the present matter" because, according to him, such lawsuits have no bearing on material issues in this case.  (R. 118, Pl.'s Mot. Nos. 1-12 at 4.)  Defendant objects to Plaintiff's request to exclude evidence regarding other lawsuits he filed because "admission of other prior or subsequent lawsuits for [P]laintiff but no other parties is improper."  (R. 141, Def.'s Resp. at 5.)

Other lawsuits Plaintiff may have filed are not relevant to the issues before the jury, and Defendant's what-is-good-for-the-goose-is-good-for-the-gander argument is not appropriate here.  Fed. R. Evid. 401.  Even if such lawsuits were relevant, the risk of prejudice to Plaintiff likely would outweigh their probative value.  Fed. R. Evid. 403.  If Defendant wishes to bar Plaintiff from referring to

Defendant's other lawsuits, it should have filed its own motion rather than seeking this relief in a response to a motion.

## I.     Motion No. 9

The motion is denied.  Plaintiff seeks to bar Defendant from referring to his prior or subsequent medical conditions that are "wholly disassociated from and do not . . . serve as a 'sole cause' defense to Plaintiff's present claim for compensation, and which Defendant cannot medically associate by competent medical testimony and relate to Plaintiff's present injury."  (R. 118, Pl.'s Mot. Nos. 1-12 at 4.)  Plaintiff cites *Voykin v. Estate of DeBoer*, 192 Ill.2d 49, 59 (2000), to support his assertion that evidence of a prior injury requires "expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence." (R. 118, Pl.'s Mot. Nos. 1-12 at 4.)

Defendant contends that Plaintiff's motion is overbroad and that it cannot fully respond without knowing the specific conditions to which Plaintiff refers. (R. 141, Def.'s Resp. at 5.)  Defendant asserts that Plaintiff's conditions of diabetes and bilateral upper extremity pain, which he had "before, during, and after the incident with the down rod," are relevant to his diagnosis of CRPS.  (Id. at 5-7 (citing R. 142, Def.'s Resp. Ex. J at 50-52) (pointing out that during about 25 chiropractic visits for numbness and tingling in his upper extremities, Plaintiff did not complain about lower leg pain).)  Defendant notes that according to Plaintiff's expert Dr. Jay Joshi, CRPS is a highly contextual diagnosis in which "other causes are ruled in and ruled out," incorporating "not just the positives but the negatives."

(Id. at 5-6 (citing R. 142, Def.'s Resp. Ex. A at 36-37, 182).)  Defendant thus contends that it cannot properly cross examine Plaintiff's witnesses without discussing Plaintiff's diabetes and how it relates to his lower leg pain.  (Id. at 6.)

Plaintiff's motion is denied because, as Defendant correctly points out, he fails to adequately develop his arguments and specify which prior and subsequent conditions Defendant should be barred from discussing at trial.  Expert medical testimony is generally necessary when asserting a causal connection between medical conditions and events.  *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001); *Trice v. Hess*, No. 17 CV 01345, 2021 WL 979285, at *1 (S.D. Ill. March 15, 2021).  As such, if Defendant offers evidence as to Plaintiff's prior or subsequent medical conditions without laying the proper foundation, Plaintiff is free to object at trial.

## J.    Motion No. 10

The motion is denied.  Plaintiff moves to bar Defendant from offering any evidence about government benefits that he is currently receiving or may receive in the future.  (R. 118, Pl.'s Mot. Nos. 1-12 at 4.)  Plaintiff cites no case or rule in support of this request.  Defendant counters that it cannot respond without knowing which government benefits the motion is referring to, as "there has been no testimony in the case nor benefits identified that apply."  (R. 141, Def.'s Resp. at 8.)

The parties have agreed that Defendant may not introduce evidence of collateral source benefits to limit its damages.  (R. 137 at 1.)  But the scope of the collateral source rule may not extend to all evidence related to government benefits.

14

*See Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986) ("The purpose of the collateral source rule is . . . to prevent the tortfeasor from paying twice."). For example, in *Steck v. Bimba Mfg. Co.*, No. 96 CV 7442, 1997 WL 685003, at *3 (N.D. Ill. Oct. 30, 1997), the court admitted evidence of the plaintiff's filing for disability benefits because the plaintiff admitted that she was disabled in the application. *See also Salesman v. Yellow Ambulance Servs.*, No. 18 CV 00096, 2020 WL 224597, at *6 (S.D. Ind. Jan. 15, 2020) (finding that plaintiff's disability benefits were relevant to damages because they pointed to previous injury that contributed to chronic pain). Therefore, a ruling barring all references to government benefits is overly broad in scope.

## K.    Motion No. 11

The motion is granted. Plaintiff seeks to bar Defendant from referring to "personal beliefs of any legal counsel in this cause specifically as to the honesty, veracity or credibility of any of the witnesses." (R. 118, Pl.'s Mot. Nos. 1-12 at 4-5.) Plaintiff cites Illinois cases to support the rule that counsel may neither express her own personal beliefs nor personally vouch for witness credibility. *See, e.g.*, *Lagoni v. Holiday Inn Midway*, 262 Ill. App. 3d. 1020, (1994). Defendant objects on grounds that Plaintiff's motion is too broad and has no legal basis. (R. 141, Def.'s Resp. at 8.)

The court agrees with Plaintiff. It is well established that attorneys may not assert their personal opinions as to the credibility of a witness or the ultimate issue in a case. *See, e.g.*, *United States v. Young*, 470 U.S. 1, 7-9 (1985); *Can. Dry Corp. v. Nehi Beverage Co.,* 723 F.2d 512, 526 (7th Cir. 1983); Model Rules of Pro. Conduct

R. 3.4(e) (Am. Bar Ass'n 2019). As such, both parties are barred from injecting their attorneys' own personal opinions at trial.

## L.    Motion No. 12

The motion is denied. Plaintiff moves to bar Defendant from asserting that it is "'shocked' by Plaintiff's request for damages or that said request is 'outrageous' or any other remark which expresses a personal opinion regarding said request." (R. 118, Pl.'s Mot. Nos. 1-12 at 5.) Defendant responds that Plaintiff's motion "suggests the defense cannot attack the value of the damages claimed." (R. 141, Def.'s Resp. at 8.) Defendant asserts that it is permitted to "express dismay" at the amount of a damage request. (Id. at 9.)

Consistent with the court's ruling on Motion No. 11, while the parties' attorneys may not offer their personal opinions, Defendant may question the damage request and argue that the request is excessive. *See Semprini*, 2007 WL 9735729, at *1 (allowing arguments that criticize requested damages or suggest that such damages are "overinflated"). As in the court's ruling on Motion No. 2, if Defendant uses unduly prejudicial language to characterize Plaintiff's damage request at trial, Plaintiff is free to object.

## M.    Motion No. 13

The motion is granted. Plaintiff asks the court to bar Defendant from referring to his prior history of smoking. (R. 119, Pl.'s Mot. No. 13 at 1-3.) Defendant does not oppose this motion. (R. 141, Def.'s Resp. at 9.)

16

**N.      Motion No. 14**

The motion is denied.   Plaintiff seeks to bar Defendant from raising contributory negligence as an issue here because, according to him, there is no evidence that his actions contributed to or caused the subject incident.  (R. 120, Pl.'s Mot. No. 14 at 1-2.)  Plaintiff notes that Defendant's cashier was the only person in control of the metal down rod just before it slipped out of the shopping cart.  (Id. at 2-3.)  The cashier also testified in her deposition that she did not warn Plaintiff before placing it back in the cart, though she knew as part of her training that "those rods were not meant to be in those carts."   (Id. at 3.)   Additionally, Defendant's Asset Protection and Safety Officer and the store manager each testified that they had no criticism of Plaintiff's actions.  (Id. at 5-7.)  Plaintiff further asserts that Defendant has not offered any witnesses or evidence to suggest that Plaintiff was at fault.  (Id. at 7.)  He therefore argues that any allegation of contributory negligence would be unduly prejudicial.  (Id.)

Defendant objects that this motion is improper because it is "more in the nature of a dispositive motion, without following the proper process, timing and protocol for such a motion."  (R. 141, Def.'s Resp. at 9.)  Defendant also asserts that "[p]laintiff may have placed [the] down rod in the cart exactly the same way the Defendant's cashier placed it in the cart," thus establishing a sufficient evidentiary basis of contributory negligence for the fact finder to consider.  (Id.)

Plaintiff essentially argues here that Defendant's contributory negligence defense should fail on the merits, but whether Plaintiff was contributorily negligent

is an issue of fact for the jury. Moreover, Plaintiff's argument does not pertain to the admissibility of evidence and thus falls outside the range of a motion *in limine*. *See Huff v. State of Ill.*, No. 97 CV 4568, 2003 WL 168630, at *2 (N.D. Ill. Jan. 23, 2003) ("Deciding claims on the merits is not a proper office of a motion in limine."); *see also Sellers Cap., LLC v. Wight*, No. 15 CV 7644, 2017 WL 3037802, at *5 (N.D. Ill. July 18, 2017) (noting that motions *in limine* are not to be used as substitutes for dispositive motions because they lack the necessary procedural safeguards). As such, the motion is denied.

## O.    Motion No. 15

The motion is denied. Plaintiff seeks to bar Defendant's medical expert Dr. Joshua Prager from opining that Plaintiff's treating physician would have "recognized and appreciated" CRPS symptoms if such symptoms existed. (R. 121, Pl.'s Mot. No. 15 at 1-2.) Dr. Prager testified at his deposition that he found Plaintiff's treating physician, Dr. Joshua Farbman, to be a "competent neurologist" based on the quality of Dr. Farbman's notes and the reputation of the institution where he was employed. (Id. at 2-3.) Dr. Farbman treated Plaintiff for two years after the subject incident in this case and did not diagnose him with CRPS or raise the possibility of CRPS. (Id. at 3; see R. 142, Def.'s Resp. Ex. D at 66.) "Were CRPS present," Dr. Prager opined, "[Dr. Farbman] would have picked it up." (R. 121, Pl.'s Mot. No. 15 at 2.)

Plaintiff argues that Dr. Prager's opinion on this topic does not satisfy the standard for admissibility of expert testimony set forth in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), and Federal Rule of Evidence 702. Plaintiff asserts that Dr. Prager's opinion fails to meet this standard because he opines on what a "competent neurologist" would have done and on Dr. Farbman's state of mind, despite not knowing Dr. Farbman personally or by reputation. (R. 121, Pl.'s Mot. No. 15 at 2, 3, 5.) Defendant counters that Dr. Prager may "opine on the competency of the treating doctors based on his review of any medical records or testimony." (R. 141, Def.'s Resp. at 10.)

The court agrees with Defendant. Although Plaintiff frames his argument as a Rule 702 or *Daubert* challenge to Dr. Prager's testimony, Plaintiff's assertions are more accurately characterized as an objection under Federal Rule of Evidence 703. Rule 702 governs when a witness may testify as an expert, while *Daubert* "confides to the district court a gatekeeping responsibility to ensure that the proposed expert testimony 'is not only relevant, but reliable.'" *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871-72 (7th Cir. 2021) (quoting *Daubert*, 509 U.S. at 589); *see also* Fed. R. Evid. 702. Under *Daubert*, "the district court must engage in a three-step analysis, evaluating: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Id.* at 872 (internal quotation marks omitted). By contrast, Federal Rule of Evidence 703 governs the bases of an expert's opinion testimony. This Rule provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. While the expert cannot act as a

conduit for inadmissible hearsay, he may rely on facts or data routinely relied upon in his field when drawing conclusions. *Id.*

Here, Plaintiff challenges neither Dr. Prager's qualifications, the reliability of his methodology, nor the relevance of his testimony. Instead, Plaintiff essentially argues that Dr. Prager's testimony is improper speculation because Dr. Prager lacks personal knowledge of Dr. Farbman's professional habits, approach to patient examinations, and background experience or training. (See R. 121, Pl.'s Mot. No. 15 at 5.) This is a Rule 703 challenge to the bases of Dr. Prager's opinion testimony. Rule 703, however, explicitly provides that an expert witness—unlike a lay witness—need not have personal knowledge to offer an opinion on a subject within his expertise and can instead base an opinion on facts or data made available to him. *Compare* Fed. R. Evid. 703 *with* Fed. R. Evid. 701. Consistent with Rule 703, Dr. Prager permissibly relied upon Dr. Farbman's notes in forming his opinion that Dr. Farbman is a competent neurologist, and that a competent neurologist would have recognized the symptoms of CRPS if they were present.

Furthermore, Dr. Prager's testimony is properly offered as expert testimony under Rule 702 and *Daubert*. Dr. Prager is a well-qualified pain physician with 25 years of experience working with CRPS patients. (See R. 142, Def.'s Resp. Ex. B at 143.) As such, he is competent to offer an opinion as to Dr. Farbman's ability to recognize CRPS symptoms. It is reasonable to accept that physicians such as Dr. Prager routinely rely upon the substance of others' notes when drawing conclusions about patients, doctors, and diagnoses. (See R. 121, Pl.'s Mot. No. 15 at

2 (recognizing that Dr. Prager represented he sees the "broad spectrum" of treatment notes).) There is thus no reason to doubt the reliability of the practice in this instance. And Dr. Prager's opinion is clearly relevant to Plaintiff's assertion that he suffered CRPS because of Defendant's negligence. Therefore, as permitted by the Federal Rules of Evidence, Dr. Prager used his specialized experience in the pain management field to draw conclusions within his expertise based upon the material provided to him.

Finally, the court finds that Dr. Prager's opinion would not cause unfair prejudice to Plaintiff. Dr. Prager does not profess to "read [Dr. Farbman's] mind" as Plaintiff alleges, but rather appropriately acknowledges the limitations of his opinion. (Id.) When asked whether "any competent neurologist in the world" should have been able to diagnose CRPS under the circumstances, Dr. Prager replied, "Well, should and does are two different things, but if it's a competent neurologist, 'should' fits." (Id. at 2.) Dr. Prager also states that competence to make a diagnosis and actual documentation of that diagnosis are two different matters. (Id.) Therefore, Dr. Prager's opinion provides enough information for the jury to weigh his testimony without threatening undue prejudice to Plaintiff. Plaintiff, of course, is well within his rights to challenge Dr. Prager's reasoning and conclusions—but the appropriate vehicle for doing so is cross examination, not a motion *in limine*. *See, e.g.*, *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) ("Determinations on admissibility should not supplant the adversarial process;

'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination.").

## P.    Motion No. 16

The motion is granted in part and denied in part.  Plaintiff moves to bar Dr. Prager from testifying about "Plaintiff's state of mind and/or the severity of Plaintiff's subjective complaints of pain in his lower right extremity, based on records from Wheaton Chiropractic." (R. 132, Pl.'s Mot. No. 16 at 1-2.)  Plaintiff also seeks to bar Dr. Prager from testifying that Plaintiff's lower leg-pain complaint would be relevant to chiropractic care and about the chiropractic standards of care. (Id. at 12.)

While Plaintiff was receiving treatment for pain in his lower leg, he also visited Dr. Scott Hallums at Wheaton Chiropractic with complaints of neck pain and numbness and tingling in his wrist.  (Id. at 2.)  During Wheaton Chiropractic's intake process, Plaintiff completed a detailed "case history" form and did not list lower leg pain, nor did he mention any such pain during about 25 chiropractic visits.  (R. 142, Def.'s Resp. Ex. J at 41-44.)  During his deposition, Dr. Prager opined that the lack of notation of lower extremity pain in the chiropractic records was evidence that Plaintiff was either not experiencing such pain or was not experiencing pain "sufficient to be associated with CRPS." (R. 132, Pl.'s Mot. No. 16 at 2-3.)  Plaintiff contends that Dr. Prager's testimony is "speculative, irrelevant, unfairly prejudicial since it is unreliable," and does not satisfy Federal Rule of Evidence 702.  (Id. at 2.)

Defendant disagrees that such evidence should be excluded, first arguing that Dr. Prager did not opine on Plaintiff's state of mind. (R. 141, Def.'s Resp. at 10.) Dr. Prager was repeatedly asked whether he was making assumptions about Plaintiff's thought process, and he answered that he was not. (Id.) Instead, according to Defendant, Dr. Prager was opining on the absence of Plaintiff's complaints about his lower extremities during chiropractic visits, and the possible implications of that absence. (Id. at 10-11.) Second, Defendant contends that Dr. Prager adequately explained why he was qualified to "opine about a chiropractor's records and [Plaintiff's] care," and why the absence of complaints about the lower leg area were "relevant and critically important to his opinions in this case." (Id. at 11 (citing R. 142, Def.'s Resp. Ex. B at 167-68, 186-88).) Third, Defendant points to Dr. Hallums's testimony about holistic care and the overall importance of "positives and negatives" in diagnosing CRPS. (Id. at 11-12 (citing R. 142, Def.'s Resp. Ex. J at 15-43).) The "lack of complaints or findings . . . during the relevant time period after the Lowe's incident," Defendant asserts, "are exceedingly important on many levels to this lawsuit." (Id.)

The motion is denied as to Dr. Prager's opinions based on his review of the Wheaton Chiropractic records and based on his experience treating CRPS patients. Federal Rule of Evidence 703 allows an expert to base his opinion on facts or data provided to him so long as experts in the field reasonably rely on those kinds of facts or data in drawing their conclusions. Dr. Prager has personally reviewed the Wheaton Chiropractic notes, he routinely reviews notes as part of his practice, and

he provides holistic care to his patients such that he engages with other care providers in forming treatment plans. (See R. 142, Def.'s Resp. Ex. B at 120, 167-71, 176.) There is nothing to indicate that this is an unreasonable approach in the field of CRPS care.

The motion is granted in that Dr. Prager may not testify about Plaintiff's state of mind or the pain levels he experienced while under Dr. Hallums's care. During his deposition, Dr. Prager recognized that speculation about Plaintiff's subjective experience was impermissible, agreeing that Plaintiff could have been experiencing pain despite the absence of documented pain in his records. (See id. at 173 (reflecting Dr. Prager's refusal to speculate on why Plaintiff did not document any pain).) Because Dr. Prager did not observe Plaintiff's chiropractic appointments himself, he cannot draw conclusions about Plaintiff's condition at that time. *See* Fed. R. Evid. 703.

The motion is also granted as to Dr. Prager's opinion about the standard of care for a chiropractor. As Dr. Prager admits, he is not an expert in chiropractic care. (See R. 142, Def.'s Resp. Ex. B at 168.) Therefore, he is not qualified to opine as to what information is important in the field or the relevant standard of care. This ruling does not bar Dr. Prager from testifying about what is generally relevant in CRPS treatment and from offering examples of what he considers important for his own patients. With a detailed understanding of Dr. Prager's experience with CRPS patients and in the medical field, the jury will be well-positioned to weigh his opinions accordingly.

**Q.    Motion No. 17**

The motion is denied.  Plaintiff seeks to bar Defendant from arguing that "there have been no prior, similar occurrences or attempts to characterize the occurrence as a 'freak,' 'unforeseeable' or similar descriptive occurrence[.]"  (R. 134, Pl.'s Mot. No. 17 at 2.)  Plaintiff asserts that these descriptions are irrelevant when assessing whether Defendant acted reasonably.  (Id.)  Plaintiff further contends that "attempts to label the occurrence" are intended only to inflame the emotions of the jury.  (Id.)  Defendant counters that Plaintiff cites no case law to support his argument and that it is "well within [Defendant's] rights to argue whether such an event was ever foreseeable."  (R. 141, Def.'s Resp. at 12.)

As a matter of law, Plaintiff is incorrect that arguments about foreseeability are "irrelevant to the question of whether the Defendant in this case acted reasonably towards [Plaintiff] under the circumstances."  (R. 134, Pl.'s Mot. No. 17 at 2.)  Plaintiff has brought a negligence action against Defendant under Illinois law.  (See R. 3-1, Compl.)  In Illinois, success on a negligence claim requires Plaintiff to prove three elements: "[1] that the defendant owed a duty to the plaintiff, [2] that defendant breached that duty, and [3] that the breach was the proximate cause of the plaintiff's injuries."  *Steed v. Rezin Orthopedics and Sports Med.*, 2021 IL 125150, ¶ 36.  Illinois uses the term "proximate cause" to refer to "two distinct requirements: cause in fact and legal cause."  *Id.* at ¶ 37.  Under this framework, "legal cause involves an assessment of foreseeability" and "is established only when the injury is reasonably foreseeable, *i.e.*, when the

defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it." *Id.* (internal quotation marks and citation omitted).

As a result, not only is the issue of foreseeability directly relevant to the issues in this suit, but Plaintiff bears the burden of demonstrating that injury was a reasonably foreseeable result of Defendant's actions to make out his *prima facie* case of negligence. As foreseeability is therefore a potentially dispositive question of fact for the jury to consider, Defendant may certainly raise arguments regarding the foreseeability of the incident. That said, if Defendant uses unfairly prejudicial language to characterize the subject incident, Plaintiff may object at trial.

## Conclusion

For the foregoing reasons, Plaintiff's Motion Nos. 3, 8, 11, and 13 are granted, Motion No. 16 is granted in part and denied in part, and Motion Nos. 1, 2, 4-7, 9, 10, 12, 14, 15, and 17 are denied.

ENTER:

_____

**Young B. Kim**
**United States Magistrate Judge**