## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **KRISHNA NARSIMHAN,** | ) | |
| | ) | **No. 19 CV 1255** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **LOWE'S HOME CENTERS, LLC,** | ) | |
| | ) | **March 30, 2022** |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM OPINION and ORDER

Before the court are Defendant's motions *in limine* Nos. 1-9. Plaintiff opposes Motion No. 1 in part and Nos. 3, 4, and 6-9 in full. For the following reasons, Defendant's Motion Nos. 1(B), 1(D), 1(E), 1(F), 1(H), 1(I), 1(J), 2, 3, 5, 7(A), 7(B), 7(C), and 9(B) are granted, Motion Nos. 1(A), 1(K), 4, and 6 are granted in part and denied in part, and Motion Nos. 1(C), 1(G), 8, and 9(A) are denied:

### Background

Plaintiff claims that he sustained personal injuries for which Defendant is liable when a metal "down rod" slipped through the slats of his shopping cart during the checkout process and struck him on the lower part of his right leg. (R. 3-1, Compl. ¶¶ 2-3; R. 142, Def.'s Resp. Ex. D at 35-36.) Plaintiff contends that Defendant's negligence caused him to suffer from Chronic Regional Pain Syndrome ("CRPS"). (R. 142, Def.'s Resp. Ex. D at 65.) A jury trial is set to begin on April 22, 2022. (R. 146.)

## Legal Standard

The court's authority to rule on motions *in limine* springs from its inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Accordingly, evidence may be excluded pursuant to a motion *in limine* only when it is inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *See Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). Further, "[a] pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chi.*, No. 09 CV 4837, 2001 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce*, 469 U.S. at 41-42.

## Analysis

### A.    Motion No. 1

**(i)    Motion No. 1(A):** This motion is granted in part and denied in part. Defendant seeks to bar Plaintiff from referring to any prior litigation regarding the parties or their experts.  (R. 123, Def.'s Mot. No. 1 at 1.)  Plaintiff contends that Defendant's request, if granted, would prevent him from questioning Defendant's expert witness about his involvement as an expert in previous lawsuits.  (R. 138, Pl.'s Resp. at 1.)

Because Defendant's involvement in other lawsuits has no relevance to the issues before the court, the motion is granted in that Plaintiff may not refer to Defendant's prior litigation.  Fed. R. Evid. 401.  However, the motion is denied as to any expert witness's involvement in prior litigation, provided that references to such involvement relate to the expert's possible bias.  *See Shepherd v. Life Ins. Co. of N. Am.*, No. 11 CV 3846, 2012 WL 379775, at *4 (N.D. Ill. Feb. 3, 2012) (allegations that expert witness was the "hired gun of several other insurers" were admitted as relevant to expert's bias); *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury . . . [is] entitled to assess all evidence which might bear on the accuracy and truth of a witness'[s] testimony.").  Indeed, while bias alone may not be sufficient to disqualify an expert, the jury may weigh any biases when assessing the expert's credibility, making this issue appropriate for cross examination at trial.  *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988).

**(ii)    Motion No. 1(B):** This motion is granted.  Defendant seeks to bar Plaintiff from showing evidence in the presence of the jury before this court has found such evidence admissible.  (R. 123, Def.'s Mot. No. 1 at 1.)  Plaintiff does not oppose this motion.  (R. 138, Pl.'s Resp. at 2.)

**(iii)    Motion No. 1(C):** This motion is denied.  Defendant moves to bar all lay witnesses from testifying or opining about medical conditions and conclusions, contending that lay people lack the requisite experience and training to provide such opinions.  (R. 123, Def.'s Mot. No. 1 at 1-2.)  Plaintiff counters that Defendant's motion is overbroad because it would prevent Plaintiff and his wife from testifying about his symptoms and their effects on his life.  (R. 138, Pl.'s Resp. at 2.)

The court agrees with Plaintiff.  Under Federal Rule of Evidence 701, lay witnesses may offer opinions that: (a) are based on their personal experience; (b) help the jury understand the relevant testimony or determine an issue of fact; and (c) are not based on scientific, technical, or specialized knowledge.  Thus, although Plaintiff may not self-diagnose, he and other lay witnesses may give fact-driven descriptions of Plaintiff's medical condition, including his symptoms.  Further, lay witnesses are permitted to make certain conclusory statements so long as they can provide factual support for those conclusions.  *See Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565-66 (7th Cir. 2006) (holding that district court did not abuse its discretion in allowing layperson to describe the plaintiff's mental condition as "depressed").

**(iv)    Motion No. 1(D):** This motion is granted.  Defendant asks the court to bar Plaintiff from referring to any expenses incurred in bringing the present lawsuit.  (R. 123, Def.'s Mot. No. 1 at 2.)  Plaintiff does not oppose this motion. (R. 138, Pl.'s Resp. at 2.)

**(v)    Motion No. 1(E):** This motion is granted.  Defendant seeks to bar Plaintiff from commenting on "whether or not any party complied with or refused to comply with any discovery request in this case."  (R. 123, Def.'s Mot. No. 1 at 2.) Plaintiff does not oppose this motion.  (R. 138, Pl.'s Resp. at 2.)

**(vi)    Motion No. 1(F):** This motion is granted.  Defendant moves to bar any evidence of medical bills or special damages that have not been disclosed and produced before trial.  (R. 123, Def.'s Mot. No. 1 at 2.)  Plaintiff does not oppose this motion.  (R. 138, Pl.'s Resp. at 3.)

**(vii)    Motion No. 1(G):** This motion is denied.  Defendant moves to bar Plaintiff from commenting on Defendant's refusal to stipulate to any matter in controversy, asserting that there is no probative value in advising jurors that a party refused to agree to procedures required by the court.  (R. 123, Def.'s Mot. No. 1 at 2.)  Plaintiff counters that the scope of Defendant's motion is unclear. (R. 138, Pl.'s Resp. at 3.)  Further, he argues that if granted, the motion would prevent him from using the video of the subject incident and admissions from Defendant's employee to argue that Defendant has "failed to acknowledge its role" in the incident.  (Id. at 3-4 (citing R. 140, Pl.'s Resp. Ex. J at 23, 42).)

Defendant has not established why evidence of its refusal to stipulate should be considered inadmissible for any purpose. *See Woods v. Amazon.com, LLC*, No. 17 CV 4339, 2019 WL 2323874, at *3 (N.D. Ill. May 30, 2019) (denying motion *in limine* to bar references to failure to stipulate because the defendant provided no context for the request). Like Plaintiff, the court finds that the scope of Defendant's motion is both vague and overbroad. If Plaintiff offers evidence regarding Defendant's failure to stipulate for which there exists little or no probative value, Defendant is free to object at trial.

**(viii) Motion No. 1(H):** This motion is granted. Defendant seeks to bar references to its failure to call any witness "equally available to [P]laintiff in this case." (R. 123, Def.'s Mot. No. 1 at 2.) Plaintiff does not oppose this motion. (R. 138, Pl.'s Resp. at 4.)

**(ix) Motion No. 1(I):** This motion is granted. Defendant seeks to bar any suggestions that its expert has had his licensure or hospital staff privileges suspended, revoked, or restricted. (R. 123, Def.'s Mot. No. 1 at 2.) Plaintiff does not oppose this motion. (R. 138, Pl.'s Resp. at 4.)

**(x) Motion No. 1(J):** This motion is granted. Defendant moves to bar Plaintiff from referring to its attorneys as the "Defense Team" or otherwise suggesting that Plaintiff's attorney is "outmanned." (R. 123, Def.'s Mot. No. 1 at 2.) Plaintiff does not oppose this motion. (R. 138, Pl.'s Resp. at 4.)

**(xi) Motion No. 1(K):** This motion is granted in part and denied in part. Defendant seeks to bar Plaintiff from urging the jury to "send a message" or "punish

6

the [D]efendant" or from making "other inflammatory remarks" in attempts to increase Plaintiff's damage award. (R. 123, Def.'s Mot. No. 1 at 3.) Plaintiff agrees not to use the terms "send a message" or "punish the [D]efendant" but contends the request to bar "other inflammatory remarks" is overbroad and unclear. (R. 138, Pl.'s Resp. at 4.) Plaintiff asks the court to assess any such remarks on a "case-by-case basis." (Id.)

"Send a message" arguments generally are permitted only where punitive damages are at stake. *Cazares v. Frugoli*, No. 13 CV 5626, 2017 WL 4150719, at *5 (N.D. Ill. Sept. 19, 2017). Plaintiff does not seek punitive damages in the instant case. As such, Plaintiff is barred from arguing that the jury must "send a message" or "punish the Defendant." However, given the ambiguity of Defendant's reference to "other inflammatory remarks," any such statements should be assessed in the context of the trial as a whole. If Plaintiff encourages the jury to elevate his damage award in an unduly prejudicial or inflammatory manner, Defendant may object at trial.

## B. Motion No. 2

The motion is granted. Defendant moves to bar allegations or opinions that Dr. Joshua Farbman, Plaintiff's treating neurologist, committed malpractice. (R. 124, Def.'s Mot. No. 2 at 1-2.) Plaintiff does not oppose this motion. (R. 138, Pl.'s Resp. at 5.)

### C.     Motion No. 3

The motion is granted.   Defendant seeks to bar references to the medical condition of its expert witness, Dr. Joshua Prager.  (R. 125, Def.'s Mot. No. 3 at 1-2.) During Dr. Prager's deposition, Plaintiff's counsel commented that he saw Dr. Prager's hands shaking as he performed an independent medical examination ("IME") of Plaintiff.  (Id. at 1 (citing R. 133, Def.'s Ex. B at 155).)  Dr. Prager replied that he has a tremor from hypoglycemia and "didn't have lunch that day," though he takes medication to mitigate the tremor when necessary.  (Id.)  Defendant contends that this personal medical issue is not relevant to the issues in this case because it does not impact Dr. Prager's IME findings, opinions, or credibility.  (Id. at 2.)  As such, according to Defendant, any evidence about Dr. Prager's hand tremor would be more prejudicial than probative.  (Id.)

Plaintiff counters that under Federal Rule of Evidence 401, Dr. Prager's condition is relevant to the jury's weighing of his IME findings.  (R. 138, Pl.'s Resp. at 6.)  He emphasizes that Dr. Prager was one diagnostic criterion short of finding that Plaintiff suffers from CRPS and argues that the jury should be permitted to consider Dr. Prager's ability to recognize the signs of that condition given the potential effects of his hypoglycemia.  (Id. at 7-10 (listing hypoglycemia symptoms such as confusion and blurred vision).)  Additionally, Plaintiff argues that testimony about Dr. Prager's condition would not be unduly prejudicial because Dr. Prager freely admitted to having a hand tremor and not having taken his medication.  (Id. at 10-11.)

The court agrees with Defendant that Dr. Prager's hand tremor is not relevant to any fact of consequence in this lawsuit. Fed. R. Evid. 401. Plaintiff has not alleged or presented evidence to show that Dr. Prager was suffering from confusion, blurred vision, or any other severe effects of hypoglycemia during the IME. (See R. 138, Pl.'s Resp. at 9-10 (listing symptoms without linking them to Dr. Prager).) Nor has Plaintiff explained how Dr. Prager's tremor prevented him from assessing Plaintiff's symptoms. When Plaintiff's counsel asked Dr. Prager at his deposition why his hands were shaking, Dr. Prager answered that he has a tremor from hypoglycemia and counsel responded, "[t]hat's fine," without asking further questions about the tremor. (R. 133, Def.'s Ex. B at 155.) There is no evidence to suggest that Dr. Prager's medical condition is relevant to the weight of his testimony. Even if such information were relevant, the risk of prejudice to Defendant and the potential for misleading the jury likely would outweigh any probative value. Fed. R. Evid. 403.

## D.     Motion No. 4

The motion is granted in part and denied in part. Defendant moves to bar Dr. Sunil Matiwala, Plaintiff's primary care physician, from testifying about three topics: (1) the care and treatment of Plaintiff's right lower leg pain; (2) Plaintiff's lumbar sympathetic block procedure; and (3) Plaintiff's condition after September 29, 2020, Plaintiff's last known date of care. (R. 126, Def.'s Mot. No. 4 at 1-3.) Defendant asserts that Dr. Matiwala lacks expertise to opine on the first and second

topics, and that he did not timely disclose an opinion relating to the third topic. (Id.)

Plaintiff objects, asserting first that Dr. Matiwala is sufficiently qualified to opine on Plaintiff's lower leg pain. (R. 138, Pl.'s Resp. at 13.) For support Plaintiff points to Dr. Matiwala's routine treatment for diabetes patients like Plaintiff, which includes a diabetic foot exam. (See id. (noting that diabetes patients sometimes experience a "sense of pain, burning sensation" in their extremities (quoting R. 133, Def.'s Ex. C at 8)).) Because a CRPS diagnosis requires a finding that none of the relevant CRPS symptoms can be explained by another condition, Plaintiff argues that Dr. Matiwala should be allowed to testify that Plaintiff's complaints of lower-leg pain were not related to diabetes. (Id. at 14.) Plaintiff next contends that because Dr. Matiwala did not disclose an opinion on Plaintiff's lumbar sympathetic block procedure, Defendant's request is not appropriate for a motion *in limine* and should be disregarded. (Id. at 15-16.) Finally, Plaintiff asserts that Dr. Matiwala's testimony about his "continued care" of Plaintiff should not be barred because the case cited by Defendant, *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761 (N.D. Ill. 2005), does not apply here. (R. 138, Pl.'s Resp. at 16.) Plaintiff argues that Defendant's motion, if granted, would create the impression that Plaintiff is not currently managing his diabetes. (Id. at 17.)

The motion is denied as to Dr. Matiwala's opinions about the care and treatment of Plaintiff's lower leg pain. Federal Rule of Evidence 702 allows an expert qualified by knowledge, skill, experience, training, or education to opine on

relevant matters that assist the jury in determining a fact at issue. Dr. Matiwala is board-certified in internal medicine and routinely treats patients with conditions like diabetes. (Id. at 13.) Such treatment includes examination of lower extremities, and Dr. Matiwala examined Plaintiff's foot for both circulation and sensory response. (R. 133, Def.'s Ex. C at 13-14.) He also treated a rash on Plaintiff's lower leg, noted that Plaintiff was experiencing hypersensitivity in the ankle area, and was able to rule out diabetes as the cause of swelling in Plaintiff's foot and ankle. (Id. at 16-18, 36, 44.) As Plaintiff points out, Dr. Matiwala's observations and opinions are relevant to Plaintiff's CRPS diagnosis because they explain which symptoms are attributable to diabetes and which are not. (R. 138, Pl.'s Resp. at 14-15.) Although Dr. Matiwala expressed deference to Plaintiff's neurologist and pain physician, such deference does not negate Dr. Matiwala's expertise. Rather, Dr. Matiwala ensured his testimony did not exceed the permissions granted by Federal Rule of Evidence 702. Dr. Matiwala therefore may opine as to his care and treatment of Plaintiff's lower leg as it relates to diabetes and any other areas that fall within his expertise as a primary care physician.

The motion is also denied as to testimony from Dr. Matiwala dated after Plaintiff's last known date of care—September 29, 2020. Defendant fails to adequately develop its argument and explain why Dr. Matiwala's continuing care of Plaintiff should be barred outright. The court prefers to hear whether Dr. Matiwala offers such information, and in what context, before assessing its relevance and admissibility.

However, the motion is granted as to Dr. Matiwala's opinions on Plaintiff's lumbar sympathetic block procedure. When asked about the procedure during his deposition, Dr. Matiwala stated that its purpose was beyond his expertise and that he did not give Plaintiff any advice regarding the procedure. (R. 133, Def.'s Ex. C at 26.) Accordingly, Dr. Matiwala is barred from testifying about the procedure for any purpose, regardless of whether such testimony was ever disclosed.

**E.    Motion No. 5**

The motion is granted. Defendant moves to bar Plaintiff from offering evidence pertaining to Plaintiff's son's medical condition. (R. 127, Def.'s Mot. No. 5 at 1-2.) Plaintiff does not oppose this motion. (R. 138, Pl.'s Resp. at 18.)

**F.    Motion No. 6**

The motion is granted in part and denied in part. Defendant seeks to bar Dr. Yumna Saeed, Plaintiff's treating neurologist, from opining on the purpose of Plaintiff's lumbar sympathetic block procedure. (R. 128, Def.'s Mot. No. 6 at 1-2.) Defendant asserts that, by her own admission, Dr. Saeed lacks the proper foundation and expertise to testify about this subject. (Id.) For support Defendant points to Dr. Saeed's testimony that she does not specialize in or perform lumbar sympathetic blocks, nor has she ever been present for such a procedure. (Id. (citing R. 133, Def.'s Ex. F at 24-25).) Defendant also moves to bar evidence of Dr. Saeed's care of Plaintiff after September 6, 2020, as no further care has been disclosed. (Id. at 2.)

Plaintiff counters that Dr. Saeed is qualified to testify about her understanding of the procedure's purpose—"to limit the severity of the pain"—which she shared during her deposition. (R. 138, Pl.'s Resp. at 18 (quoting R. 133, Def.'s Ex. F at 25).) Plaintiff further asserts that Defendant's motion to exclude evidence of care beyond September 6, 2020, is improper because such evidence "does not exist," as Dr. Saeed has not continued to treat Plaintiff. (Id. at 19.)

Given Plaintiff's representation that he has not continued treatment with Dr. Saeed, the motion as to testimony from Dr. Saeed about treatments rendered after September 6, 2020, is denied as moot. However, the motion is granted as to Dr. Saeed's testimony on the purpose of a lumbar sympathetic block procedure. A qualified expert witness may opine on subjects that will help the jury understand the evidence or determine a fact at issue. Fed. R. Evid. 702. The court does not find that Dr. Saeed's testimony about the lumbar sympathetic block procedure can be helpful because both parties and Dr. Saeed agree that details about this procedure would exceed the bounds of Dr. Saeed's expertise, (see R. 128, Def.'s Mot. No. 6 at 1-2; R. 138, Pl.'s Resp. at 18-19), and there is no evidence that she ever prescribed such treatment for Plaintiff.

## G. Motion No. 7

**(i)     Motion No. 7(A):** This motion is granted. Defendant moves to bar Dr. Jay Joshi, Plaintiff's retained expert and rebuttal expert, from testifying about: (1) Dr. Asokumar Buvanendran's recommendation that Plaintiff undergo a dorsal root ganglion ("DRG") procedure; and (2) ketamine infusions as a possible treatment

alternative. (R. 129, Def.'s Mot. No. 7 at 1-3.) According to Defendant, any such testimony is vague, speculative, and lacks a basis in medical certainty. (Id. at 2.) As to the DRG procedure, Defendant explains that Dr. Joshi stated it was a "reasonable next step" without providing additional detail or information. (Id. at 1-2 (quoting R. 133, Def.'s Ex. A at 172).) Similarly, Dr. Joshi identified ketamine infusions as "something . . . that might offer the patient relief" without elaborating on the appropriateness of such a recommendation. (Id. at 2.) Defendant also notes that neither the DRG procedure nor ketamine infusions are mentioned in Dr. Joshi's expert report. (Id. at 1-2.)

Plaintiff asserts that Dr. Joshi's opinions are not speculative because he "definitively testified" that the DRG procedure and ketamine infusions are reasonable treatments for Plaintiff. (R. 138, Pl.'s Resp. at 20). Plaintiff also points to the portion of his Rule 26(a)(2) disclosure covering Dr. Joshi's testimony, which notes that "[t]he [d]iagnosis of CRPS is permanent . . . although there are various methods to attempt to treat and minimize the symptoms as much as possible." (Id. at 20-21 (quoting R. 140, Pl.'s Ex. M at 3).)

The court agrees with Defendant's contention that Dr. Joshi must testify in accordance with his report. The report does not include Dr. Joshi's opinions about either the DRG procedure or ketamine infusions, a point Plaintiff does not dispute. Though Plaintiff's Rule 26(a)(2) disclosure briefly mentions that there exist "various methods" of pain mitigation, Dr. Joshi's report does not specify or elaborate upon such methods. Rather, his primary opinion is that Plaintiff's condition is

permanent. Discussion of Plaintiff's pain management options is thus beyond the scope of the disclosed material and barred.

(ii)    **Motion No. 7(B):** This motion is granted. Defendant moves to bar Dr. Joshi from testifying about the cost of ketamine infusions. (R. 129, Def.'s Mot. No. 7 at 2-3.) Because Dr. Joshi stated that he did not "have those codes or those numbers" and that he would "refer to the billers," Defendant asserts that any testimony on cost would lack foundational support. (Id. at 3.) Plaintiff does not respond to Defendant's contentions on this point. (See R. 138, Pl.'s Resp. at 20-22.) Given Dr. Joshi's testimony, he is not qualified to testify about this topic. Fed. R. Evid. 702.

(iii)    **Motion No. 7(C):** The motion is granted. Defendant seeks to bar Dr. Joshi from attesting to "what a chiropractor can and cannot do" because he lacks qualifications and experience in the chiropractic field. (R. 129, Def.'s Mot. No. 7 at 3-4.) Specifically, Defendant asks the court to strike testimony from Dr. Joshi's rebuttal deposition stating that chiropractors "are focused on the spine" and not the extremities. (Id. at 4 (quoting R. 133, Def.'s Ex. I at 21-22).) Plaintiff objects to Defendant's characterization of the testimony, contending that Dr. Joshi instead opined on "the weight he would give to chiropractic records as they relate to CRPS, based on his understand[ing] of chiropractic treatment from his experience working with chiropractors." (R. 138, Pl.'s Resp. at 21.)

Here, the court agrees with Defendant because although Dr. Joshi has worked with chiropractors, he is not qualified to opine on the nature of chiropractic

care. Fed. R. Evid. 702. Dr. Joshi testified that pain management physicians like himself have a "completely different specialt[y] [and] different skillsets" than chiropractors. (R. 133, Def.'s Ex. I at 21.) He is therefore barred from testifying that chiropractors focus on spinal care and treatment. This ruling does not bar Dr. Joshi from testifying about how Plaintiff's chiropractic records impacted his opinions, nor does it prevent Dr. Joshi from explaining how he works with chiropractors to treat his own patients.

## G.    Motion No. 8

The motion is denied. Defendant asks the court to bar Dr. Joshi from testifying about Plaintiff's medical prognosis. (R. 130, Def.'s Mot. No. 8 at 1-2.) According to Defendant, Dr. Joshi testified "in a lengthy fashion" in his deposition "that he cannot render any opinion on the prognosis [for] Plaintiff's condition, for a variety of reasons." (Id. at 1 (citing R. 133, Def.'s Ex. A at 115-122).) Defendant also asserts that Dr. Joshi does not offer a credible opinion on Plaintiff's prognosis to a reasonable degree of medical certainty, having admitted that he never did a "deep dive" into the prognosis as it was "not his job" to do so. (Id.)

Plaintiff objects to Defendant's characterization of Dr. Joshi's testimony, pointing to Plaintiff's Rule 26(a)(2) disclosure and attached IME in which Dr. Joshi finds Plaintiff's symptoms consistent with CRPS and discusses the permanence of such a diagnosis. (R. 138, Pl.'s Resp. at 23 (citing R. 140, Pl.'s Ex. M at 3, 63).) Additionally, Plaintiff argues that Defendant's assertion that Dr. Joshi "never did a deep dive" into Plaintiff's prognosis is "misleading and inaccurate." (Id. at 25.) He

points out that during Dr. Joshi's deposition, the physician described three factors that informed his opinion about Plaintiff's prognosis: (1) quality of care; (2) access to care; and (3) treatment. (Id. at 24, 26 (citing R. 133, Def.'s Ex. A at 115).) While Dr. Joshi may not have done a "deep dive" into these factors as they relate to Plaintiff, Dr. Joshi opined on Plaintiff's prognosis assuming the factors are met. (Id. at 25-26.)

The court agrees with Plaintiff. Defendant mischaracterizes Dr. Joshi's deposition testimony by implying that Dr. Joshi does not opine on Plaintiff's prognosis in any sort of medically cognizable fashion. In fact, Dr. Joshi opines that Plaintiff's prognosis could vary based on the quality of the care he receives, his insurance coverage, and whether he decides to receive certain recommended treatments. "If that's all happening, then yes, there's hope that this is going to get better," Dr. Joshi explains. (R. 133, Def.'s Ex. A at 118.) He further maintains that although remission is possible with aggressive treatment, Plaintiff's symptoms could be "lifelong." (Id. at 118-19.) This opinion is consistent with Plaintiff's Rule 26(a)(2) disclosure—in which Dr. Joshi states that Plaintiff is "likely to be impaired in some degree permanently." (R. 140, Pl.'s Ex. M at 3.) When asked whether he did a "deep dive" into each of the three elements impacting prognosis "specifically as [they] relate to the [P]laintiff," Dr. Joshi told counsel he did not understand the question. (R. 133, Def.'s Ex. A at 120.) After receiving clarification, Dr. Joshi answered that it was "not [his] job" to tell the Plaintiff about "treatment and prognosis stuff" in the context of an IME. (Id. at 121.) A witness's confusion about

17

a question is not an invitation to discount his testimony by cherry-picking quotations from his deposition.

## I. Motion No. 9

(i) **Motion No. 9(A):** This motion is denied. Defendant seeks to bar Lisa Schwarz, one of Plaintiff's physical therapists, from opining on Plaintiff's CRPS diagnosis because, according to Defendant, she lacks the experience, education, and training to support such an opinion. (R. 131, Def.'s Mot. No. 9 at 1.) Defendant contends that Schwarz impermissibly offers "broad-brush" medical opinions in her deposition, such as stating that "[w]ith CRPS the nervous system kind of goes haywire, but there's no new damage." (Id. at 2 (quoting R. 133, Def.'s Ex. G at 45).) Defendant also asks the court to bar any testimony from Schwarz regarding care rendered after the last treatment date noted in her deposition, February 27, 2020. (Id.) In response, Plaintiff asserts that Schwarz does not opine on Plaintiff's diagnosis, but rather explains the treatment she provided, why it was necessary, and how it addressed Plaintiff's complaints. (R. 138, Pl.'s Resp. at 27-28.)

The motion is denied in that Schwarz may testify about Plaintiff's CRPS symptoms as they are relevant to explaining his treatment plan. Schwarz does not opine as to the accuracy of Plaintiff's CRPS diagnosis and, in fact, acknowledges that her role is not to diagnose a condition but rather to provide treatment for previously diagnosed conditions—as she did for Plaintiff. (R. 133, Def.'s Ex. G at 6.) As such, while Schwarz is not qualified to assess whether Plaintiff's diagnosis is right or wrong, she is qualified to explain the treatment plan she developed for

Plaintiff. See Fed. R. Evid. 702. Schwarz notes that her treatment for chronic pain patients like Plaintiff includes retraining the nervous system to stop sending "a pain message even when there's no new pain or damage." (R. 133, Def.'s Ex. G at 45.) Based on her experience working with CRPS and other chronic pain patients, Schwarz explains that the nervous system sends a "mixed message" to the body, indicating pain even when the body is not suffering a "new" injury. (Id. at 11, 45.) Such testimony is permitted.

The motion is also denied as to Schwarz's testimony regarding care given after February 27, 2020. Defendant does not explain why this evidence should be considered inadmissible for any purpose. If offered, the court will address the relevance and admissibility of such evidence at trial.

**(ii)     Motion No. 9(B):** This motion is granted. Defendant moves to bar Brian Fischer, one of Plaintiff's other physical therapists, from opining about whether Plaintiff's condition was consistent with CRPS or whether Plaintiff's CRPS diagnosis is correct. (R. 131, Def.'s Mot. No. 9 at 2.) Defendant contends that Fischer's education, training, and experience do not qualify him to provide opinions about medical diagnoses. (Id. at 4.) Defendant further seeks to bar Fischer from testifying about Plaintiff's "percentage" of disability as derived from a questionnaire that Plaintiff completed about his lower extremity function. (Id. at 4-5.)

Plaintiff counters that Fischer never opined about Plaintiff's CRPS diagnosis, but instead used Plaintiff's existing diagnosis to explain his treatment plan. (R. 138, Pl.'s Resp. at 29.) Plaintiff also contends that Fischer's testimony about

Plaintiff's "percentage" of disability is simply a way to measure his progress during therapy. (Id. at 30.) Plaintiff states he will not discuss the disability "percentage" at trial. (Id. at 31.) However, Plaintiff does seek to use Fischer's testimony to show that his CRPS caused "functional limitations" preventing him from living a normal life. (Id.)

The motion is granted in that Fischer may not testify as to whether Plaintiff's condition was consistent with CRPS or whether the diagnosis was accurate. Like Schwarz, Fischer clearly states that medical diagnoses fall outside the scope of his work. (R. 133, Def.'s Ex. H at 13-14.) But Fischer also notes that "based on the referral saying the CRPS and the way [Plaintiff] presented, there was nothing for me to indicate that diagnosis was incorrect[.]" (Id. at 14.) Because Fischer is a physical therapist and does not detail prior experience working with CRPS patients, he is barred from testifying that CRPS was not an incorrect diagnosis for Plaintiff. Fed. R. Evid. 702. He may refer, however, to Plaintiff's CRPS diagnosis in explaining the treatment rendered.

The motion is also granted as to Fischer's testimony about Plaintiff's "percentage" of disability. The "disability percentage" is drawn from a questionnaire that focuses on a particular body part and asks patients how difficult it is for them to complete "various tasks." (Id. at 42.) Fischer states that the resulting "lower extremity functional scale" has been peer reviewed but does not know "how [the] scale stands as it relates specifically to CRPS." (Id.) He then explains that a score of 31 out of 80 indicates a patient is "over 50 percent disabled .

. . specific to this one measure of indicating his function." (Id. at 43.) Fischer admits the scale is just "one tool" to measure a patient's progress. (Id. at 42.)

Given the uncertainty about the scale's reliability for a patient like Plaintiff, statements about his disability "percentage" have minimal probative value in demonstrating Plaintiff's ability to function. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (requiring court to ensure expert testimony is relevant and reliable). Such statements also risk confusing or misleading the jury. Fed. R. Evid. 403. Furthermore, a statement that Plaintiff is "over 50 percent disabled" is unnecessarily broad and conclusory, and risks misleading the jury in its assessment of Plaintiff's alleged injury. *See United States v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012) ("[A] witness should not be allowed to put an 'expert gloss' on a conclusion that the jurors should draw themselves.").

## Conclusion

For the foregoing reasons, Defendant's Motion Nos. 1(B), 1(D), 1(E), 1(F), 1(H), 1(I), 1(J), 2, 3, 5, 7(A), 7(B), 7(C), and 9(B) are granted, Motion Nos. 1(A), 1(K), 4, and 6 are granted in part and denied in part, and Motion Nos. 1(C), 1(G), 8, and 9(A) are denied.

ENTER:

_____

**Young B. Kim**
**United States Magistrate Judge**